## ELIZABETH CARLISLE and JOHN CARLISLE, *against* ADAM STITLER.

### IN ERROR.

An entry is not necessary in any case in Pennsylvania, in order to enable the person who has title to recover the possession of lands.

Every owner is in possession until some person actually enters on him under an adverse claim, and the statute of limitations begins to run from the time actual adverse possession is taken only.

The disability of marriage cannot be added to the prior disability of infancy, to avoid the operation of the statute.

W. L. owned a tract of land containing two hundred and eighty-seven acres, under an application and survey, of which he never had actual possession, and died in 1784, leaving issue Elizabeth in her minority, who at the age of twenty, married J. C. in April, 1787. At the time of the death of W. L. all but eighty acres of the said tract was held adversely by C. S. under a younger title by improvement, warrant and survey, who in 1793, bought under another title the said eighty acres, and took possession, which was held by those claiming under him. J. C. intermarried with E., died in 1815, and to February term, 1818, the said E. C. brought ejectment. *Held*, that as to so much of the tract of which said C. S. had adverse possession at the death of W. L., the said E. his daughter, was barred by the statute of limitations, but that as to the eighty acres of which the said C. S. took adverse possession in 1793, she was not barred.

When the right to the eighty acres, descended to E. C. in law she acquired the possession, and the true construction of the act of limitations gives a feme covert the same time when adverse possession is taken of her lands while she is covert, as it would have given her if there had been adverse possession and the lands had descended to her when she was covert.

WRIT of error to the common pleas of Westmoreland county.

*Foster*, for the plaintiff in error.

*Alexander*, for defendant in error.

The facts of the case are fully stated in the opinion of the court, which was delivered by

HUSTON, J.—This was an ejectment by *Adam Stitler* against *Elizabeth Carlisle*, who having died, her heirs were substituted defendants by consent.

The case was considered in the nature of a special verdict, either party to be at liberty to take a writ of error.

One *Michael Byerly* and another made an improvement and built a cabin, in 1773, and sold the right to *Conrad Stitler*, who moved to the land and lived on it until his death about 1796—in 1786, *C. Stitler* took out a warrant for three hundred acres, describing the land and paying interest from 1st March, 1772—the same year he got a survey made and returned containing three hundred and eight acres.

On the 25th July, 1769, *John Irvine* obtained an application No. 3668, for three hundred acres of land on Brush creek, at the mouth of Irvin's run, and about two miles below the mouth of Bunky run.

On the 12th April, 1790, a survey was made on this by *B. Lodge*, a deputy surveyor, of two hundred and eighty-seven acres, (this

(Elizabeth Carlisle and John Carlisle *v*. Adam Stitler.)

survey was in all respects the same as to courses, distances and corners, with another survey to be mentioned directly.)

In 1791, *John Irvine* got a patent, and in 1793 sold the land with warranty to *Conrad Stitler*. This latter survey interfered greatly with *Stitler's* survey on his warrant, only about eighty acres were clear of his own former survey on his warrant. *Stitler* and his family occupied the lands until 1811, and died; on a writ of partition, the land in question, being that part which did not interfere with *Stitler's* old survey, was allotted to *Adam Stitler*, one of the heirs of *Conrad Stitler*.

*Conrad Stitler* and his heirs were in possession of and claimed all the land embraced in both the surveys before mentioned and are yet in possession of the land embraced in said surveys, except the one fourth part of that part of the survey of *John Irvine*, which did not interfere with *Stitler's* old tract.

On the 25th July, 1769, *John Irvine*, Indian trader, (being the same man who entered the preceding application, No. 3668,) entered another application No. 3663, for three hundred acres on the waters of Brush creek, on the south west side of the new road, &c. On the 4th May, 1771, he sold this to *William Lyon* for twenty pounds by deed recorded in 1787.

On the 22d June, 1772, a survey was made of two hundred and eighty acres, and returned in October, 1772. This survey, I said before was the same afterwards taken in 1790, under the other application in the name of *John Irvine*.

*William Lyon* never was in actual possession of any part of the land. —he died in 1784, leaving a son born in 1764, who died in 1817.

There was another son who died without issue, and intestate, and a daughter *Elizabeth Lyons*, born in 1767, and who married *John Carlisle* on the 16th April, 1787—*John Carlisle* died in 1815, and to February term, 1818, *Elizabeth Carlisle* brought an action of ejectment against the said *Adam Stitler* for the undivided fourth part of two hundred and eighty-seven acres contained within the survey of *John Irvine*, and she recovered an undivided fourth part of all that part of that survey which lay east of the survey in *Conrad Stitler's* name and judgment on the verdict in 1821:—and for that part within the survey of *Conrad Stitler*, verdict and judgment for defendant. *Elizabeth Carlisle* entered into possession of the part so recovered by her, and this suit is brought by *Adam Stitler*, to try again her right to that land.

It will be seen then, that her right descended to *Elizabeth Lyon*, in 1784, when she was an infant. That she married *John Carlisle* in April, 1787, being then aged about twenty years. That her husband lived until about 1815, and she brought her suit in 1818. It was contended that being a minor when these lands descended to her, allowing twenty-one years, and then ten years more on account of her infancy, which was all that in any case could be asked, the time (thirty-one years,) expired in the year 1815, and

that her recovery in a suit brought in 1818, was against right. It is true that the disability of marriage cannot be added to the prior disability of infancy; nor can the infant child of a woman who dies covert, have a longer period than its mother would have had if she had survived her husband. That part of the claim which affected lands of which *Conrad Stitler* was in possession when *William Lyon* died, came within the principle; and it was rightly decided that as to *Stitler's* old survey, Mrs. *Carlisle* was barred. But the eighty acres, part of which is now in dispute, which was within the first survey, on application *John Irvine*, No. 3663—and which was included in the survey on application No. 3668, was not claimed or occupied by *Stitler*, until after 1792, when he bought it from *John Irvine.* The possession and the right of this part descended together to *Elizabeth Lyons*, and both right and possession continued in her until *Stitler* purchased from *Irvine*, and he being in actual possession, totally ignorant of any claim but his own, held for himself and adverse to all the world. At the time he acquired this possession and right, *Elizabeth* was a married woman. As to this part, of which she was not disseised until 1792 or 3, she being covert at that time, the statute did not run against her until her husband's death, and she brought her suit within three years from that time.

The act of the 26th March, 1715, says, " From henceforth no person shall make entry into any manors, lands, tenements or hereditaments, after the expiration of twenty-one years next after his, &c. right or title to the same first accrued."  In this clause it is evident the writer did not know that an entry was not necessary in any case in Pennsylvania, in order to enable the person who had title to recover the possession of lands.  It seems not to have been considered that *the possession, and the right, in all cases* descended or accrued together, unless there was an *adverse* possession at the time *the title vested:* and if adverse possession was taken afterwards, the twenty-one years began to run from the commencement of adverse possession:  The next clause is more easily understood: " nor shall any person whatever have or maintain any writ of right, or any real or possessory writ or action, for any manor, lands, tenements or hereditaments, of the seisin and possession of him, her or themselves, his, her or their ancestor or predecessors, nor declare or allege any other seisin or possession of him, her or themselves, his, her or their ancestors or predecessors, than within twenty-one years next before such writ, action or suit, so hereafter to be sued, commenced or brought. But though it is easily understood, it is not because in the construction of it, any attention was paid to grammar, or any care shewn to avoid unnecessary, and in that place, unmeaning words:—but it shews clearly enough, that this statute does not effect a man who is in possession, I repeat, until some person actually enters on him, enters an adverse claim.

(Elizabeth Carlisle and John Carlisle *v*: Adam Stitler.)

The fourth section, containing the saving for infants, married women, &c. has the same inaccuracy as the first clause of the second section above mentioned, and would seem to make the statute run against infants, married women, &c. although they were themselves in possession. The truth is the statute was made to bar those out of possession, and who continued out of possession, and did not bring suit within the time prescribed for each. The law does not refer or apply to those in possession, except to protect them after certain prescribed periods. The second, third and fourth sections all suppose persons to be out of possession, and limit the periods within which they must bring suits, according to the age and situation of each: while in possession it has no application. Mrs. *Carlisle* then was in possession at the time this land descended to her—in possession when she married, and until 1773, when *Stitler's* adverse title and possession commenced—and the true construction of the act gives her the same time where adverse possession is taken of her lands while she is covert, as it would have given of her, if there had been adverse possession, and the lands had descended to her when she was covert.

Judgment for plaintiff in error.